******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## CHERYL L. PEARLMAN *v.* DOUGLAS GERVOLINO
## (AC 47514)

Cradle, C. J., and Elgo and Wilson, Js.

*Syllabus*

The plaintiff landlord appealed from the trial court's judgment with respect to its award of attorney's fees and costs to the defendant tenant on the count of his counterclaim alleging violations of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.) in connection with the plaintiff's handling of his security deposit. The plaintiff claimed that the court improperly awarded the defendant attorney's fees and costs for matters not authorized under CUTPA. *Held*:

The trial court abused its discretion in calculating the amount of attorney's fees and costs the defendant was entitled to recover, as pursuant to the statute (§ 42-110g (d)) providing for an award of attorney's fees and costs under CUTPA, such fees and costs are limited to work reasonably performed by an attorney related to the prosecution of a CUTPA claim and, on review of the defendant's affidavit, his request for attorney's fees included fees for matters unrelated thereto.

Argued April 16—officially released July 29, 2025

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the defendant filed a counterclaim; thereafter, the case was tried to the court, *Shaban, J.*; judgment in part for the plaintiff on the complaint and judgment in part for the defendant on the counterclaim; subsequently, the court granted the defendant's motion for attorney's fees and denied the plaintiff's motion to reargue, and the plaintiff appealed to this court. *Reversed*; *further proceedings.*

*Cheryl L. Pearlman*, self-represented, the appellant (plaintiff).

*Opinion*

CRADLE, C. J. The self-represented plaintiff, Cheryl L. Pearlman, appeals from the judgment of the trial

court awarding the defendant, Douglas Gervolino, attorney's fees and costs pursuant to the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[1] On appeal, the plaintiff claims that the court improperly awarded the defendant attorney's fees and costs not authorized under CUTPA. Specifically, the plaintiff claims that the court's award of attorney's fees was not limited to those fees associated with the defendant's CUTPA claim.[2] We agree and, accordingly, reverse the judgment of the trial court and remand the case for a new hearing on the defendant's motion for attorney's fees.[3]

The following facts, as found by the trial court, and procedural history are relevant to the plaintiff's appeal. On July 19, 2022, the defendant entered into a written lease with the plaintiff for the use and occupancy of 130 Head of Meadow Road in Newtown (premises) from August 1, 2022, through May 31, 2023, at a rate of $3700 per month. The defendant paid a $7400 security deposit to the plaintiff to secure the lease. "Not long after taking occupancy, problems arose between the parties." The defendant "claimed that the premises was unfit for human habitation and, on that basis, withheld rent for the . . . months of . . . September and October, 2022." Consequently, the plaintiff commenced a summary process action seeking possession of the premises. On October 28, 2022, the court in that action rendered judgment of possession in favor of the plaintiff,

---

[1] Pursuant to CUTPA, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a).

Attorney's fees may be awarded for a violation of CUTPA pursuant to General Statutes § 42-110g (d).

[2] The defendant did not file a brief in this appeal. We, therefore, have considered this appeal on the basis of the record, the plaintiff's appellate brief, and the plaintiff's oral argument before this court.

[3] In light of our disposition, we need not address the plaintiff's additional claim that the trial court erred by denying her motion to reargue the award of attorney's fees. See, e.g., *Glory Chapel International Cathedral* v. *Philadelphia Indemnity Ins. Co.*, 224 Conn. App. 501, 517 n.8, 313 A.3d 1273

and the defendant subsequently vacated the premises. The two months of unpaid rent, however, remained outstanding, and the plaintiff, in turn, refused the defendant's request for the return of his security deposit.

Thereafter, on November 23, 2022, the plaintiff commenced the underlying action against the defendant, alleging, inter alia, breach of contract for nonpayment of rent. The defendant, in turn, filed an answer, special defenses, and a five count counterclaim. Pertinent to this appeal, count two of the counterclaim alleged that the plaintiff failed to place the defendant's security deposit into an escrow account in violation of General Statutes § 47a-21 (h),[4] and count five of the counterclaim alleged multiple violations[5] of CUTPA.[6] The matter was tried before the court, *Shaban, J.*, on July 12,

_____

(2024); *Doe* v. *West Hartford*, 168 Conn. App. 354, 359 n.5, 147 A.3d 1083 (2016), aff'd, 328 Conn. 172, 177 A.3d 1128 (2018).

[4] General Statutes § 47a-21 (h) provides in relevant part: "(1) Each landlord shall immediately deposit the entire amount of any security deposit received by such landlord from each tenant into one or more escrow accounts established or maintained in a financial institution for the benefit of each tenant. Each landlord shall maintain each such account as escrow agent and shall not withdraw funds from such account . . . .

(4) (A) The landlord shall provide each tenant with a written notice stating the amount held for the benefit of the tenant and the name and address of the financial institution at which the tenant's security deposit is being held not later than thirty days after the landlord receives a security deposit from the tenant or the tenant's previous landlord or transfers the security deposit to another financial institution or escrow account. . . ."

[5] Specifically, the defendant alleged that the plaintiff's violation of § 47a-21 (h), as set forth in count two of the counterclaim, constituted a violation of CUTPA. The remaining CUTPA violations alleged in count five of the counterclaim consisted of several alleged violations of § 47a-21 (d) related to the plaintiff's handling of the security deposit, the plaintiff's unauthorized towing of the defendant's car, and the plaintiff's "failure to provide smoke alarms" and "to maintain the premises in a condition fit for habitation."

[6] The remaining counts of the counterclaim alleged breach of contract related to the plaintiff's handling of the security deposit (count one), harassment and unlawful entry into premises (count three), and trespass to chattel on the basis of the plaintiff having the defendant's car towed from the premises (count four).

2023. On November 9, 2023, the court issued a memo-
randum of decision in which it found in favor of the
plaintiff on her claim of breach of contract for nonpay-
ment of rent and in favor of the defendant on counts
two and five of his counterclaim.[7] With respect to count
two of the counterclaim, the court found that the plain-
tiff, "by admission through her pleading and her own
testimony," failed to deposit the defendant's security
deposit into an escrow account, as required by statute.
With respect to count five, the court found that the
plaintiff's violations of § 47a-21 (h) constituted viola-
tions of CUTPA.[8] Specifically, with respect to the
CUTPA violations, the court relied on the plaintiff's
failure to place the security deposit into an escrow
account in violation of § 47a-21 (h) (1),[9] and the plain-
tiff's failure to provide the defendant with certain infor-
mation regarding his security deposit in violation of
§ 47a-21 (h) (4) (A).[10] The court awarded the defendant
$500 in punitive damages on the CUTPA count of the
counterclaim.[11] In addition, the court found that, "[b]ecause

[7] In addition, the court found in favor of the defendant on count four of
the counterclaim and in favor of the plaintiff on counts one and three of
the counterclaim. See footnote 6 of this opinion.

[8] The court found in favor of the plaintiff with respect to the remaining
CUTPA violations alleged in count five of the defendant's counterclaim. See
footnote 5 of this opinion.

[9] The court reasoned: "[T]his alone may not constitute a CUTPA violation.
However, coupled with the fact [that] the plaintiff withdrew the deposit
funds that were to have been escrowed for the defendant and then used
them for her own personal expenses, the court finds this constitutes both
a [statutory] violation . . . as well as a CUTPA violation. This was more
than a negligent failure to comply with the statute. It was an unscrupulous,
wilful and voluntary act to use the funds for her own personal expenses
outside of the enumerated uses authorized by the statute. . . . Simply put,
the actions of the plaintiff were unfair to the defendant." (Citation omitted.)

[10] The court reasoned: "The failure to provide the information was an
unfair act with respect to the defendant as the funds belonged to him and
he had a right to know where they were being held. By failing to reveal the
information, the plaintiff effectively hid from the defendant her use of the
funds for her personal benefit."

[11] On appeal, the plaintiff does not challenge the court's award of puni-
tive damages.

the defendant has had to prosecute his counterclaim to enforce his claims of statutory violations relative to his security deposit, an award of attorney's fees is appropriate. The defendant may pursue such an award pursuant to Practice Book § 11-21[12] if he so [chooses]." (Footnote added.)

On November 13, 2023, the defendant filed a motion for attorney's fees pursuant to CUTPA. The defendant submitted with his motion an affidavit of legal fees (affidavit), which contained an itemized billing statement of counsel's services.[13] The affidavit indicated that the defendant's counsel charged $450 per hour, and he expended 25.9 hours on the defendant's case, thereby incurring $11,655 in fees and $369.51 in costs. On November 28, 2023, the plaintiff filed an objection to the defendant's motion for attorney's fees, in which she argued, inter alia: "CUTPA allows for [the award of] 'reasonable [attorney's] fees' . . . [which] logically includes only charges associated with [the CUTPA claim], i.e., the claimed withholding of the banking/deposit information for the security deposit, but not for other matters and claims not associated with [the CUTPA] claim. The fees requested [by the defendant] include time expended to respond to all claims by the plaintiff as well as [all] five counterclaims submitted by the defendant," several of which "concern other matters and . . . [on] which the defendant [did not prevail]."

A hearing on the defendant's motion for attorney's fees was scheduled for December 18, 2023, and was

---

[12] Practice Book § 11-21 provides in relevant part that "[m]otions for attorney's fees shall be filed with the trial court within thirty days following the date on which the final judgment of the trial court was rendered. . . ."

[13] During the hearing on the motion for attorney's fees, the defendant's counsel indicated to the court that the affidavit of attorney's fees that he filed with the court contained "the exact billing records that [he gave] to [the defendant] . . . except . . . in the form of an affidavit instead of an invoice."

continued to January 23, 2024, by request of the plaintiff. On the morning of the January 23, 2024 hearing, the plaintiff filed a motion for an additional continuance on the basis that she was "out of state." The court denied her request for an additional continuance,[14] and the hearing on the defendant's motion for attorney's fees proceeded in the plaintiff's absence. Following the hearing, the court issued a written order indicating that "[t]he defendant appeared at the hearing, and the court considered the defendant's motion for [attorney's] fees . . . [and] also reviewed the plaintiff's objection [to the defendant's motion] and had defense counsel address any specific objections raised [therein]." The court, "[h]aving reviewed the bases of the defendant's motion . . . [found that] the defendant has set forth a legal basis for his claim for attorney's fees and [costs] in the defense of the plaintiff's action and the prosecution of his counterclaims." (Citations omitted.) Accordingly, the court awarded the defendant attorney's fees and costs in the amount of $12,024.51, which included all the fees and costs set forth in the defendant's affidavit. On February 14, 2024, the plaintiff filed a motion to reargue the award of attorney's fees, asserting, inter alia, that "[t]he court abused its discretion in awarding attorney's fees to the defendant [related to] counts [for] which [he is] not entitled" to recover fees. The court denied the plaintiff's motion to reargue. This appeal followed.

On appeal, the plaintiff claims that the court abused its discretion in "awarding attorney's fees and costs

---

[14] In a written order issued on the same date, the court stated: "[The] plaintiff was previously granted a continuance on December 12, 2023. Further, notice of the today's hearing was issued on December 13, 2023, yet the plaintiff waited until the day of the hearing to move for an additional continuance. As noted on the judicial form for continuances, such motions are to be made at least three days before the scheduled event. Lastly, other than indicating that she is out of state, the movant provides no reason as to how and why she is prevented from attending the hearing."

not authorized under CUTPA." Specifically, the plaintiff argues that an award of attorney's fees under CUTPA is limited to those fees related to successful CUTPA claims, and that the court, "[b]y indiscriminately awarding all fees requested by the defendant that were included [in his affidavit]," improperly calculated the amount of fees and costs the defendant was entitled to recover under CUTPA.[15] We agree.

We begin by setting forth our standard of review and the legal principles relevant to the plaintiff's claim. "[W]e review an award of attorney's fees under the abuse of discretion standard of review. This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Noyes* v. *Antiques at Pompey Hollow, LLC*, 144 Conn. App. 582, 597, 73 A.3d 794 (2013).

General Statutes § 42-110g (d) provides in relevant part that "[i]n any action brought by a person under [CUTPA], the court may award . . . costs and reasonable attorneys' fees based on the work reasonably performed by an attorney . . . ." This court has held that § 42-110g (d) "relates solely to claims related to the prosecution of a CUTPA claim and not to all claims." *Jacques All Trades Corp.* v. *Brown*, 57 Conn. App. 189, 200, 752 A.2d 1098 (2000). Accordingly, "[i]n the absence of abuse of discretion, the court can award attorney's

---

[15] The plaintiff has not challenged the reasonableness of the hourly rate charged by the defendant's counsel.

fees under CUTPA only for those expenses that were related to the prosecution of a CUTPA claim." Id.; see also *Tomick* v. *United Parcel Service, Inc.*, 135 Conn. App. 589, 626 n.26, 43 A.3d 722, cert. denied, 305 Conn. 920, 47 A.3d 389 (2012), and cert. denied, 305 Conn. 920, 47 A.3d 389 (2012).

In *Jacques All Trades Corp.* v. *Brown*, supra, 57 Conn. App. 192, the plaintiff brought an action against the defendants, Laverne Brown and the city of Hartford, for breach of two separate home improvement contracts, one private contract with Brown, and the other contract with the city. Brown, in turn, asserted a counterclaim consisting of three counts, one of which alleged a violation of CUTPA. Id., 193. Brown prevailed on her CUTPA counterclaim and moved for an award of attorney's fees, upon which "the court ordered Brown's counsel to provide an itemized account of the time and expense required to litigate the CUTPA claim." Id., 200. Brown subsequently submitted a bill totaling $19,413.50, which the trial court awarded to Brown as attorney's fees under CUTPA. Id. On cross appeal to this court, Brown claimed that the trial court improperly calculated her attorney's fees. Specifically, she contended that, pursuant to § 42-110g (d), "she [was] entitled to *all* attorney's fees incurred in the defense of [the plaintiff's] action and the prosecution of her counterclaim." (Emphasis in original.) Id. This court disagreed and concluded that the trial court properly limited its award of attorney's fees solely to the fees Brown "incurred in the pursuit of her CUTPA claim" and properly excluded the "fees [related to] her other counterclaims." Id.

In *Heller* v. *D. W. Fish Realty Co.*, 93 Conn. App. 727, 734–36, 890 A.2d 113 (2006), this court further clarified the scope of attorney's fees recoverable under CUTPA. In that case, the plaintiffs brought an action against the defendant for breach of contract, negligence, and violations of CUTPA. Id., 730. After prevailing on all claims, the plaintiffs sought to recover attorney's fees

under CUTPA. Id., 734. In response, the trial court "ordered the plaintiffs to submit evidence as to the portion of the fees requested specifically related to the CUTPA [claim]," which the plaintiffs were unable to do because of the close factual connection between the claims. (Internal quotation marks omitted.) Id., 735. Because the plaintiffs were unable to apportion the fees, the trial court, relying on *Jacques All Trades Corp.*, denied their motion for attorney's fees. Id. In reversing the trial court's denial of attorney's fees, this court distinguished cases in which the factual basis of a CUTPA claim is integral to, rather than separate from, the facts underlying other claims. Specifically, this court held that the trial court improperly relied on *Jacques All Trades Corp.* in ordering the plaintiffs to apportion their attorney's fees among their claims because, "[i]n the present case, the plaintiffs' breach of contract and negligence claims were related to their CUTPA claim because they depended on the same facts." Id., 735; see also *Taylor* v. *King*, 121 Conn. App. 105, 131, 994 A.2d 330 (2010) ("when the facts underlying the CUTPA claim are indistinguishable from those facts relating to other claims, § 42-110g (d) encompasses claims related to the prosecution of a CUTPA claim . . . not only one claim explicitly labeled as a CUTPA claim" (internal quotation marks omitted)).

Thus, in the present case, the defendant's award of attorney's fees pursuant to § 42-110g (d) was limited to those fees related to the prosecution of the CUTPA count of his counterclaim. Our review of the defendant's affidavit, however, reveals that his request for attorney's fees was not limited to only those fees. For example, some of the fees listed therein were incurred by counsel's "[r]eview of [the summary process] case" and "[r]esearch [of] mortgage and federal eviction moratorium" and the filing of an unsuccessful motion to open in the summary process action. These fees appear to

be wholly unrelated to the defendant's CUTPA claim. The affidavit also includes numerous fees related to counsel's review of the pleadings, filing and amending of the counterclaim, and correspondence with the defendant and opposing party. These itemized entries, however, do not apportion the corresponding fees among the defendant's various counts of his counterclaim. And, although certain entries appear to relate solely to the defendant's CUTPA count of his counterclaim,[16] these services were billed in conjunction with more general services relating to the entire litigation, such as "trial preparation" and "[r]eview of new pleadings." In calculating the defendant's award of attorney's fees, however, the court included in its award *all* the costs and fees set forth in the defendant's affidavit. Because the court did not limit its award of attorney's fees to those fees incurred on the defendant's CUTPA claim, but, rather, expressly awarded the defendant all "attorney's fees and [costs incurred] in the defense of the plaintiff's action and the prosecution of his counterclaims," we conclude that the court abused its discretion in calculating the amount of attorney's fees and costs the defendant was entitled to recover under CUTPA.[17]

The judgment is reversed and the case is remanded for a new hearing on the defendant's motion for attorney's fees.

In this opinion the other judges concurred.

---

[16] Namely, several itemized entries in the affidavit concern the defendant's objection to the plaintiff's motion to strike the CUTPA count of the counterclaim.

[17] In the plaintiff's brief to this court, she suggests that the trial court "sought to punish [her] by awarding additional fees to the defendant beyond what was authorized by law" because she had failed to appear at the January 23, 2024 hearing. The record is devoid of any evidence to support the plaintiff's contention. We emphasize that "[t]he term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds." (Internal quotation marks omitted.) *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 774, 264 A.3d 130, cert. denied, 340 Conn. 911, 264 A.3d 94 (2021).